UNITED STATES DISTRICT COURT
EASTER DISTRICT OF TENNESSEE

WINCHESTER DIVISION

| | |
|---|---|
| DIMITRIOS ZAVOGIANNIS d/b/a GONDOLA RESTAURANT, individually and on behalf of all others similarly situated, | Case No.: _____ |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| ERIE INSURANCE EXCHANGE, ERIE INSURANCE COMPANY, ERIE INSURANCE COMPANY OF NEW YORK, AND ERIE INSURANCE PROPERTY AND CASUALTY, COLLECTIVELY D/B/A ERIE INSURANCE GROUP, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

1

# Table of Contents

I. Nature of Case .................................................................................................................3

II. Jurisdiction and Venue .....................................................................................................4

III. Parties .............................................................................................................................5

    A. Plaintiff ......................................................................................................................5

    B. Defendants .................................................................................................................5

IV. Factual Allegations .........................................................................................................6

    A. The Presence of COVID-19 and the Resulting Closure Orders ...............................6

    B. Plaintiff's Experience ................................................................................................7

V. Class Action Allegations .................................................................................................10

VI. Claims for Relief ...........................................................................................................14

    A. Claims Brought on Behalf of the Class ...................................................................14

        Count I – Declaratory Judgment ..........................................................................14

        Count II – Breach of Contract ...............................................................................15

        Count III – Breach of Implied Covenant of Good Faith and Fair Dealing ...........16

VII. Relief Requested ...........................................................................................................18

VIII. Demand for Jury Trial ................................................................................................19

Plaintiff Dimitrios Zavogiannis d/b/a Gondola Restaurant ("Gondola"), individually and on behalf of all others similarly situated, files suit against Erie Insurance Exchange, Erie Insurance Company, Erie Insurance Property & Casualty Company, and Erie Insurance Company of New York, (individually and collectively doing business as "Erie Insurance Group") (collectively, "Erie Insurance") and alleges as follows.

## I.    NATURE OF THE CASE

1.      Since March 22, 2020, Tennessee Governor Bill Lee has issued a series of Executive Orders ("Closure Orders") instructing all 6.8 million Tennessee residents to help mitigate the spread of COVID-19 by limiting social gatherings and remaining at home, with certain exceptions. Though lifesaving, these mandates, which remain partially in place, prohibited dine-in service at Tennessee restaurants. This prohibition is not merely causing severe financial distress for restaurateurs and their employees; such closures threaten the viability of Tennessee's restaurant industry.

2.      Plaintiff's restaurant, Gondola, in McMinnville, Tennessee is among the thousands of restaurants that were forced by the presence of coronavirus in the Community and State orders to cease operations as part of the Closure Orders. Gondola and many Tennessee restaurants—none of which bear fault for statewide closures—were responsible business stewards, thus paying for business interruption insurance to protect against a situation like this.

3.      But insurance companies operating in Tennessee—despite collecting premiums for such risks—are categorically denying claims from restaurants arising from the presence of the virus or Tennessee's mandated interruption of business services. Those denials are often made with little or no investigation and without due regard for the interests of insureds.

4.      Indeed, form letters denying coverage for such losses appear to rest on crabbed

3

readings of coverage language. That gets insurance law exactly backwards—and raises the specter of bad-faith denials.

5.     Gondola's experience is no different. Gondola has dutifully followed Tennessee's mandates, issued to stem the spread of coronavirus in the community. Facing serious financial harm, it has filed a claim with Erie Insurance for business interruption coverage.

6.     Erie Insurance swiftly denied the claim. Though its reasons are cursory, the denial appears to be based on an unreasonable reading of its policy, which tracks form policies issued throughout Tennessee on a take-it-or-leave-it basis.

7.     That leaves Gondola in financial straits—precisely the situation it sought to avoid when it obtained coverage for business interruptions.

8.     Gondola and other restaurants bought full-spectrum, comprehensive insurance for their *businesses* – not just for tangible damage to their premises and equipment. And for good reason. Business interruptions are a particular concern of the restaurant industry. Insurance coverage is important, if not vital, because profit margins in the restaurant industry are slim and reserve funds tend to be low.

9.     Gondola and other Tennessee restaurants reasonably believed they had comprehensive coverage that would apply to business interruptions under circumstances like these, where they have done everything right to protect their businesses and the public. But insurance companies like Erie Insurance are cutting those lifelines – despite having pocketed significant premiums for their policies.

10.    Plaintiff thus brings this action, on behalf of itself and other Tennessee restaurants similarly situated, seeking declaratory relief, insurance coverage owed under Erie Insurance's comprehensive business owners' policies, and damages.

## II.   JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and at least one member of the proposed Class is a citizen of a different state than Defendant.

12.    This Court has personal jurisdiction over Defendant Erie Insurance pursuant to Tennessee's long-arm statute, T.C.A § 20-2-223(a)(1) and T.C.A § 20-2-223(a)(6) because this complaint concerns (1) one or more contracts Erie Insurance made to insure property and/or risk in Tennessee, (2) business that Erie transacted within Tennessee and (3) one or more contracts and/or promises Erie made that are substantially connected with Tennessee.

13.    Additionally, because this action presents an actual controversy within this Court's jurisdiction, this Court may declare the legal rights and obligations of the parties hereto under 28 U.S.C. § 2201.

14.    Venue is appropriate because "a substantial part of the events or omissions giving rise to the claim[s] occurred" in the Eastern District of Tennessee. 28 U.S.C. § 1391(b).

## III.   PARTIES

### A.    Plaintiff

15.    Plaintiff Gondola is a sole proprietorship owned by Dimitrios Zavogiannis.  Its principal place of business is in McMinnville, Warren County, Tennessee.

### B.    Defendant

16.    Defendant Erie Insurance Exchange is a company organized under the laws of Pennsylvania with its headquarters in Erie, Pennsylvania.  At all relevant times, Erie Insurance Exchange operated in and was licensed to do business in Tennessee.

5

17. Defendants Erie Insurance Company is a company organized under the laws of Pennsylvania with its headquarters in Erie, Pennsylvania. At all relevant times, Erie Insurance Company operated in and was licensed to business in Tennessee.

18. Erie Insurance Company of New York is a company organized under the laws of New York with its headquarters in New York. At all relevant times, Erie Insurance Company of New York operated in and was licensed to business in Tennessee.

19. Erie Insurance Property and Casualty Company is a company organized under the laws of Pennsylvania with its headquarters in Erie, Pennsylvania. At all relevant times, Erie Insurance Property and Casualty Company operated in and was licensed to business in Tennessee.

20. Defendant Erie Insurance Group is a fictitious trade name utilized and operated through the aforementioned "Erie"-related entities. Its business address 100 Erie Insurance Place, Erie, Pennsylvania, 16530. At all relevant times, Erie Insurance Group, by and through the aforementioned entities, operated in Tennessee.

IV. **FACTUAL ALLEGATIONS**

A. **The Presence of COVID-19 and the Resulting Closure Orders**

21. In January 2020 early media reports documented an outbreak of a novel strain of coronavirus – COVID-19 – in Wuhan, China. By late January, it was generally understood in the scientific and public health communities that COVID-19 was spreading through human-to-human transmission and could be transmitted by asymptomatic carriers.

22. On January 30, 2020, reports of the spread of COVID-19 outside China prompted the World Health Organization to declare the COVID-19 outbreak a "Public Health Emergency of International Concern."

6

23.    On March 11, the World Health Organization declared COVID-19 a global health pandemic based on existing and projected infection and death rates, as well as concerns about the speed of transmission and ultimate reach of this virus.

24.    Public health officials have recognized for decades that non-pharmaceutical interventions (NPIs) can slow and stop the transmission of certain diseases. Among these are screening and testing of potentially infected persons; contact tracing and quarantining infected persons; personal protection and prevention; and social distancing. Social distancing is the maintenance of physical space between people. Social distancing can be limited – *e.g.*, reducing certain types of conduct or activities like hand-shaking – or large-scale – *e.g.*, restricting the movements of the total population.

25.    A lack of central planning, shortages of key medical supplies and equipment, and the unfortunate spread of misinformation and disinformation about the risks of COVID-19 has led to widespread confusion, unrest, and uncertainty regarding the likely trajectory of this pandemic and the appropriate counter-measures necessary to mitigate the damage it could potentially cause.

26.    Beginning in late February, public health officials began advising various governments around the world that one of the most disruptive NPIs – population-wide social distancing – was needed to stop the transmission of COVID-19. Suddenly densely occupied spaces, heavily traveled spaces, and frequently visited spaces such as schools, offices, public transit, restaurants, and shops were likely to become hot-spots for local transmission of COVID-19.

27.    By March, that advice was being implemented by state and local governments across the United States. On March 12, 2020, Tennessee's Governor Bill Lee issued Executive

Order No. 14, declaring a public health emergency in the state of Tennessee as a result of COVID-19.

28.     On March 22, 2020, Governor Lee issued Executive Order No. 17, ordering "Restaurants, bars, and similar food or drink establishments . . . shall not be open to persons, except only to offer drive-through, pickup, carry-out, or delivery service[.]"

29.     On March 30, 2020, Governor Lee issued Executive Order No. 22, directing Tennesseans to "stay at home, except for when engaging in Essential Activity or Essential Services[,]" in order to limit the spread of COVID-19.

30.     On April 24, 2020, Governor Lee issued Executive Order No. 29, which provided for the reopening of Tennessee restaurants, with certain limitations.

**B.     Plaintiff's Experience**

31.     Plaintiff operates a family restaurant called Gondola Pizza and Steakhouse in McMinnville, Tennessee.  Mr. Zavogiannis has operated his restaurant, Gondola, for 31 years. The restaurant is known throughout its community for its breakfast and lunch buffets, its three banquet rooms that host a variety of events including weddings and birthday parties, and its friendly and caring staff.

32.     Gondola has complied with all applicable Closure Orders of Tennessee state and local authorities. Compliance with those Closure Orders, and the presence of the virus in the community, has caused direct loss of Gondola's insured property in that the restaurant and its equipment, furnishings and other business personal property, has been made unavailable, inoperable, useless and/or uninhabitable; and its functionality has been severely reduced if not completely or nearly eliminated.

33.     The impact of these Closure Orders and the presence of the virus is felt not simply in their direct application to Gondola's operations, but also in the damage caused to neighboring businesses and properties.

34.     Even though Tennessee has begun to relax its mandates, Gondola will encounter continued loss of business income due to the presence of the virus and the Closure Orders because, in issuing those orders, government officials have stated that densely occupied public spaces are dangerously unsafe, and continuing to operate the restaurant might expose Gondola to the risk of contaminated premises as well as exposing customers and workers to heightened transmission and infection risks.

35.     Plaintiff purchased comprehensive business owners' liability and property insurance from Erie Insurance for the policy period of February 12, 2020 to February 12, 2021 to insure against risks the business might face. Such coverage includes business income with extra expense coverage for the loss, as well as additional "civil authority" coverage. Once triggered, the policy pays actual losses sustained for the business income and extra expense coverage.

36.     To date, Plaintiff has paid all of the premiums required by Erie Insurance to keep its policy in full force.

37.     On or about March 20, 2020 Plaintiff reported a loss of business income under its policy.  During the phone call in which Plaintiff made a claim to Erie Insurance, the insurance adjuster informed Plaintiff that as a "general rule," Erie Insurance was denying business interruption claims related to COVID-19.

38.     On or about May 7, 2020, Erie Insurance denied Plaintiff's claim for coverage. In a cursory denial letter, Erie Insurance took the position that a there was "no direct loss to [the] building or business personal property[,]" and that there was "no partial or total 'interruption of

9

business' due to direct physical 'loss' or damage to Covered Property[.]" Erie offered no written explanation of the factual or legal basis for these conclusions. Erie Insurance did not identify any exclusions from coverage.

39. Erie Insurance's denial letter, on information and belief, is a form letter sent in response to any restaurant with comprehensive business insurance that files a claim arising from Tennessee's Closure Orders, and was issued without any investigation by Erie Insurance within one day of the filing of Plaintiff's claim.

40. Business insurance policies purchased by small businesses like restaurants are not individually negotiated. At most, the prospective policyholder may elect to add specialized coverage options to a basic business insurance policy form. But the substantive terms are set unilaterally by the insurer and not subject to individual negotiation by the insured. Therefore, upon information and belief, other Erie Insurance policy holders throughout Tennessee are subject to the same terms and conditions of insurance as those contained in Plaintiff's policy.

41. Plaintiff's policy includes common terms and phrases widely used by the insurance industry. The insurance industry typically hews closely to standardized insurance policy forms in addressing property and liability risks, and Erie Insurance did so here.

42. Erie Insurance's denial is contrary to the terms and conditions of the policy and applicable law, which gives effect to plain language, construes coverage agreements broadly, narrowly construes exclusions, and construes ambiguity in favor of coverage.

43. Erie Insurance's denial of coverage breached its obligation and responsibility to provide coverage available through the policy to Plaintiff under Plaintiff's "Income Protection Coverage," "Extra Expense Coverage" and "Civil Authority Coverage" because the Closure Orders and/or the presence of Covid-19 throughout the community triggered these applicable

10

coverages contained within Plaintiff's policy. Plaintiff has suffered direct loss of its insured real and business personal property that under the policy requires coverage for the closure and interruption of business sustained by Plaintiff.

44.    As a result of Erie Insurance's denial of coverage and breach of the insurance policy it issued, Plaintiff has suffered and will continue to suffer damages due to Erie Insurance's wrongful denial of vital property and business income coverage, which Plaintiff acquired to ensure the survival of its business in these circumstances.

## V.    CLASS ALLEGATIONS

45.    Pursuant to the Fed. R. Civ. P. 23(a), 23(b)(2), 23(b)(3), and 23(c)(4), Plaintiff brings this action on behalf of itself and the following proposed Class (the "Class"):

> All restaurants in Tennessee that purchased comprehensive business insurance coverage from Defendant Erie Insurance which includes coverage for business interruption, filed a claim for lost business income following Tennessee's Closure Orders, and were denied coverage by Erie Insurance.

46.    Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

47.    Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded, divided into subclasses, or modified in any other way.

48.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**  This action has been brought and may properly be maintained as a class action as it satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements.

11

49. Although the precise number of members of the Class is unknown and can only be determined through appropriate discovery, on information and belief, the members of the proposed Class are so numerous that joinder of all members would be impracticable. There are tens of thousands of restaurants in Tennessee which are governed by the Closure Orders and attendant statewide dine-in restrictions, and public reporting reveals that many have filed claims with Erie Insurance but have been denied coverage.

50. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2).** The questions of law and fact common to the Class predominate over any questions affecting only individual Class members, particularly because the focus of the litigation will be on Erie Insurance's conduct. The predominant questions of law and fact in this litigation include, but are not limited to:

    a. Whether Defendant's comprehensive business insurance policies cover claims for lost business income under the circumstances present here;

    b. Whether Defendant violates the terms of its standard business insurance policies by denying claims for lost business income as described herein;

    c. Whether Defendant breached the implied covenant of good faith and fair dealing in its handling of its insureds' claims for lost business income;

    d. Whether Defendant acted in bad faith in denying claims for lost business income without investigation or due consideration of those claims;

    e. Whether the declaratory judgment sought is appropriate; and

    f. The proper measure of damages.

51. These questions predominate over any questions affecting only individual Class members. This is particularly true because, on information and belief, the terms of the Erie

Insurance's business insurance policies are identical or substantively identical and Erie Insurance has acted uniformly with respect to such policies.

52.     The claims asserted by the Plaintiff in this action are typical of the claims of the members of the putative Class as the claims arise under Erie Insurance's standard business insurance policies, challenge Erie Insurance's standard course of conduct under those policies, and seek common relief therefor.

53.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff will fairly and adequately represent and protect the interests of the members of the putative Class, as its interests coincide with, and are not antagonistic to, the other members of the Class. Plaintiff has retained counsel competent and experienced in consumer protection, insurance coverage, and class-action litigation.

54.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other method available for the fair and efficient adjudication of these claims including consistency of adjudications. Absent a class action it would be highly unlikely that the members of the Class would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed the expected recovery. Moreover, a class action is a superior method for the adjudication of the controversy in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense, and the burden of the courts that individual actions would create.

55.     Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2). Defendant has acted or refused to act on grounds generally applicable to the proposed Class, thereby making appropriate final and injunctive relief with respect to the members of the proposed

Class as a whole.

56.     Likewise, particular issues are appropriate for certification under Fed. R. Civ. P. 23(c)(4) because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a. Whether the comprehensive business insurance policies issued by Defendant cover Class members' direct loss of property and lost business income following the presence of coronavirus and Tennessee's Closure Orders;

b. Whether businesses like Plaintiff suffered "loss" as used in the applicable policies;

c. Whether the Closure Orders triggered coverage under Defendant's policies;

d. Whether the coverages for direct loss of property and lost business income provided by the comprehensive business insurance policies are precluded by exclusions or other limitations in those policies;

e. Whether Defendant breached contracts by denying comprehensive business insurance coverage to Plaintiff and Class members;

f. Whether Defendant's summary denial of claims for direct loss of property and lost business income, without any investigation or inquiry, constitutes bad faith and therefore a breach of the implied covenant of good faith and fair dealing to act in good faith and with reasonable efforts to perform its contractual duties and not to impair the rights of other parties to receive the rights, benefits, and reasonable expectations under the contracts;

g. Whether Erie Insurance's handling of claims for direct loss of property and

14

lost business income associated with the presence of coronavirus and public

health measures such as Tennessee's Closure Orders constitutes a breach of

the implied covenant of good faith and fair dealing; and

    h.   Whether Plaintiff and Class members are entitled to actual damages and/or

        injunctive relief as a result of Defendant's wrongful conduct.

**VI.**    <u>CLAIMS FOR RELIEF</u>

    **A.**    **Claims Brought on Behalf of the Class**

<u>**COUNT I**</u>
**Declaratory Judgment**

57.    Plaintiff re-alleges the paragraphs above as if fully set forth herein.

58.    Plaintiff purchased a comprehensive business insurance policy from Defendant.

59.    Plaintiff paid all premiums required to maintain its comprehensive business

insurance policy in full force.

60.    The comprehensive business insurance policy includes provisions that provide

coverage for the direct loss of or damage to the premises as well as actual loss of business income

and extra expenses sustained during the suspension of operations as a result of such loss or

damage.

61.    On or about March 22, 2020, Tennessee Governor Lee issued Executive No. 17,

mandating restaurants, including those owned by Plaintiffs and Class members, to cease all dine-

in services. This mandate also applied to neighboring businesses, thus causing widespread closures

surrounding Plaintiff's business premises and those of the Class.

62.    As the direct result of this mandate and the related Closure Orders, and the presence

of coronavirus in the community, Plaintiff and Class members have suffered direct loss of their

insured property within the meaning of Erie's policy, resulting in substantial loss of business

15

income.

63.     These losses are insured losses under several provisions of Erie Insurance's comprehensive business insurance policy including business income and extra expense coverage, and coverage for actions of civil authority.

64.     There are no applicable, enforceable exclusions or definitions in the insurance policies that preclude coverage for these losses.

65.     Plaintiff seeks a declaration for itself and the Class that their business income losses are covered and not precluded by exclusions or other limitations in Erie Insurance's comprehensive business insurance policy.

**COUNT II**
**Breach of Contract**

66.     Plaintiff re-alleges the paragraphs above as if fully set forth herein.

67.     Plaintiff and Class members purchased comprehensive business insurance policies from Defendant to ensure against all risks (unless specifically excluded) a business might face. These policies were binding contracts that afforded Plaintiff and Class members comprehensive business insurance under the terms and conditions of the policies.

68.     Plaintiff and Class members met all or substantially all of their contractual obligations, including paying all the premiums required by Defendant.

69.     On or about March 22, 2020, Tennessee Governor Lee issued Executive Order No. 17, mandating restaurants, including those owned by Plaintiffs and Class members, to cease all dine-in services. This mandate also applied to neighboring businesses, thus causing widespread closures surrounding Plaintiff's business premises and those of the Class.

70.     Beginning on March 22, 2020 and continuing through the date of the filing of this Complaint, Plaintiff and Class members suffered the direct loss of property and lost business

16

income as the direct result of Tennessee's Closure Orders and the presence of coronavirus in the community—losses which are covered under the comprehensive business insurance policies purchased from Defendant.

71.     There are no applicable, enforceable exclusions in Plaintiff's and Class members' comprehensive business insurance policies that preclude coverage.

72.     Defendant breached its contracts by denying comprehensive business insurance coverage to Plaintiff and Class members as described herein.

73.     As a direct and proximate result of Defendant's denial of comprehensive business insurance coverage to Plaintiff and Class members, Plaintiff and Class members suffered damages.

**COUNT III**
**Breach of Implied Covenant of Good Faith and Fair Dealing**

74.     Plaintiff re-alleges the paragraphs above as if fully set forth herein.

75.     Plaintiff and Class members contracted with Defendant to provide them with comprehensive business insurance to ensure against all risks (unless specifically excluded) a business might face.

76.     Under the laws of the states where Erie Insurance does business, including Tennessee, good faith is an element of every contract between insurance companies and their insureds.

77.     Erie Insurance's contracts are subject to implied covenants of good faith and fair dealing that all parties would act in good faith and with reasonable efforts to perform their contractual duties—both explicit and fairly implied—and not to impair the rights of other parties to receive the rights, benefits, and reasonable expectations under the contracts. These contracts thus include the covenants that Defendant would act fairly and in good faith in carrying out their contractual obligations to provide Plaintiff and Class members with comprehensive business

17

insurance.

78.     Plaintiff and covered Class members reported a loss of business income under their respective business insurance policies.

79.     Defendant denied Plaintiff's and covered Class members' claims for insurance coverage.

80.     Defendant did not have a reasonable basis for denying Plaintiff's and the covered Class members' claims for coverage.

81.     Defendant did not properly investigate plaintiff's or the covered Class members' claims, nor were the results of Defendant's investigation subject to a reasonable evaluation and review.

82.     Defendant was aware that there was no reasonable basis for denying plaintiff's or the covered Class members' claims for coverage.

83.     Defendant displayed a reckless indifference to the facts or proofs submitted by plaintiff and the covered Class members' claim for coverage.

84.     Defendant breached the implied covenant of good faith and fair dealing by:

   a.   Selling policies that appear to provide liberal coverage for loss of property and lost business income with the intent of interpreting undefined or poorly defined terms, undefined terms, and ambiguously written exclusions to deny coverage under circumstances foreseen by Defendant;

   b.   Denying coverage for loss of property and lost business income unreasonably, and without a rational basis in their policy and applicable law by applying undefined, ambiguous, and contradictory terms contrary to applicable rules of policy construction and the plain terms and purpose of the policy;

18

c.  Denying Plaintiff and Class members' claims for loss of property and loss of business income without conducting a fair, unbiased, and thorough investigation or inquiry; and

d.  Compelling Plaintiff and Class members to initiate this litigation to secure the policy benefits to which they are entitled.

85.     Plaintiff and Class members met all or substantially all of their contractual obligations, including by paying all the premiums required by Defendant.

86.     Defendant's failure to act in good faith in providing comprehensive business insurance coverage and exercising its discretion under its business insurance policies to Plaintiff and Class members denied Plaintiff and Class members the full benefit of their bargain.

87.     Accordingly, Plaintiff and Class members have been injured as a result of Defendant's breach of the covenant of good faith and fair dealing and are entitled to damages in an amount to be proven at trial.

## VII.  RELIEF REQUESTED

Plaintiff, on behalf of itself and the Class, requests the following relief:

a.  An order certifying this action as a class action under Fed. R. Civ. P. 23, appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel.

b.  A declaration that Plaintiff's and Class members' losses are covered under Defendant's comprehensive business insurance policies;

c.  Actual damages in an amount according to proof;

d.  Injunctive or declaratory relief;

e.  Pre- and post-judgment interest at the maximum rate permitted by applicable law;

19

f.   Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law;

g.   Attorneys' fees for Erie's bad faith, under the common fund doctrine, and all other applicable law; and

h.   Such other relief as this Court deems just and proper.

## VIII.   DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury on all issues so triable.

Dated: August 12, 2020                    Respectfully submitted,

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV, BPR 23045
Anthony Orlandi, BPR 33988
**BRANSTETTER, STRANCH**
**& JENNINGS, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Telephone: (615) 254-8801
gerards@bsjfirm.com
aorlandi@bsjfirm.com

Samuel Strauss*
Austin Doan*
**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, WI 53703
Telephone: (608) 237-1775
sam@turkestrauss.com
austind@turkestrauss.com

Richard E. Shevitz*
Lynn A. Toops*
Amina A. Thomas*
Lisa LaFornara*
**COHEN & MALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204

20

Telephone: (317) 636-6481
rshevitz@cohenandmalad.com
ltoops@cohenandmalad.com
athomas@cohenandmalad.com
llafornara@cohenandmalad.com

*Attorneys for Plaintiff and Proposed Class*

\* to seek admission *pro hac vice*

21